UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KAREN L. KARST

                        Plaintiff,

-vs-                                     Case No.  6:04-cv-1597-Orl-19DAB

JO ANNE B. BARNHART
COMMISSIONER OF SOCIAL SECURITY

                        Defendant.
_____

# ORDER

This case comes before the Court on the following:

1.      The Report and Recommendation of the United States Magistrate Judge.  (Doc. No. 17, filed on January 13, 2006);

2.      Plaintiff Karen L. Karst's Objection to the Report and Recommendation of the United States Magistrate Judge.  (Doc. No. 18, filed on January 23, 2006);

3.      Defendant Jo Anne B. Barnhart's Opposed Motion to Strike Portions of Plaintiff's Objections to Magistrate Judge's Report and Recommendation.  (Doc. No. 19, filed on January 31, 2006); and

4.      Plaintiff Karen L. Karst's Memorandum in Opposition to Defendant's Opposed Motion to Strike Portions of Plaintiff's Objections to Magistrate Judge's Report and Recommendation.  (Doc. No. 20, filed on February 6, 2006).

**Background**

On February 15, 2001, Plaintiff Karen L. Karst filed for a period of disability, Disability Insurance Benefits (DIB), and Social Security Insurance (SSI).  (R. 53-55).  Plaintiff's application was denied initially, and Plaintiff subsequently requested a hearing which was held on July 1, 2003 before Administrative Law Judge Albert D. Tutera ("ALJ").  (R. 36-37, 4–41, 21-29).

In a decision dated August 26, 2003, the ALJ found that Plaintiff was not disabled as defined under the Social Security Act.  (R. 21-29).  In the decision, the ALJ reviewed Plaintiff's medical history including medical evidence from William David Honeycutt, M.D., a neurologist, Michael Collins, M.D., Ahmed Masood, M.D., Donald Collins, M.D., Michael Creamer, D.O., Nancy S. Hinkeldey, Ph.D., a psychologist, and Martin S. Kane, M.D., a psychiatrist.  (R. 23-24).

Plaintiff alleged a disability that began on July 26, 2000, due to headaches, depression, and anxiety.  (R. 22).  At the July 1, 2003, hearing Plaintiff testified that she experiences headaches, receives treatment from a doctor on a monthly basis, uses morphine for pain, and also uses ice packs to dull the pain when the morphine wears off.  (R. 23).  Plaintiff receives treatment from a psychiatrist every 6-8 weeks, experiences fear of people and nervousness, does not like malls or groups, and experiences crying spells.  (*Id.*)  In terms of daily activities, from 8:00 a.m. to1:00 p.m. Plaintiff does nothing.  (*Id.*)  Her activities consist of laundry and only minimal cleaning.  (*Id.*)  Plaintiff drives her car between 1:00 p.m. to 6:00 p.m. and never drives over five miles.  (*Id.*)

The ALJ found that the medical evidence indicated that Plaintiff has degenerative disc disease of the cervical spine and headaches and impairments that are severe within the meaning of the Social Security Regulations.  (R.25).  However, the impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulation No.4.  (*Id.*)  The ALJ also

found that Plaintiff's statements were not fully credible and not persuasive of an inability to perform work-related activities.  (*Id.*)  While Plaintiff asserted depression, anxiety, headaches, and fear of people, her treatment record indicated that she prepares simple meals, can perform quick errands, does most of her shopping, and performs light cleaning and laundry.  (*Id.*)  The ALJ found that Plaintiff's depression and anxiety were related to situational issues in her life such as the death of her father, breaking up with her boyfriend, and her relationship with her family.  (*Id.*)  The ALJ further found that Plaintiff retains the residual functional capacity to perform light work because records indicated that she could lift and carry twenty pounds occasionally and ten pounds frequently, that she can sit, stand, or walk for up to six hours in an eight hour workday, and that she has postural limitations for occasionally climbing, balancing, stooping, kneeling, crouching, and crawling.  (R. 26).

Plaintiff timely filed a Request for Review of the ALJ's decision.  (R.17).  On September 10, 2004, the Appeals Council denied Plaintiff's request.  (R. 5-8).  On October 29, 2005, Plaintiff filed the instant action for judicial review of the ALJ's decision.  (Doc. No. 1).  On January 13, 2006, the Magistrate Judge issued a Report and Recommendation on Plaintiff's claim.  (Doc. No. 17).  The Magistrate Judge found that good cause existed for the ALJ's reliance on more recent evidence of Plaintiff's improvement in her headaches and his rejection of earlier headache symptoms, that the ALJ's determination that Plaintiff's statements about her pain were not fully credible was supported by substantial evidence, and that the ALJ properly relied upon the grid framework in conducting his analysis.  (*Id.*)

On January 23, 2006, Plaintiff filed an Objection to the Magistrate Judge's Report and Recommendation.  (Doc. No. 18).  Plaintiff renewed all arguments made in her Memorandum in Support of her Petition for Judicial Review and also objected to the Report and Recommendation on

the basis that the Magistrate Judge performed the task that should have been performed by the ALJ. On January 31, 2006, Defendant filed a Motion to Strike Portions of Plaintiff's Objections to the Magistrate Judge's Report and Recommendation.  (Doc. No. 19).  Defendant argues that Plaintiff's complaint that the ALJs in the Orlando office handle less than a third of the cases handled by the two Bankruptcy Judges in Orlando is improper, extraneous, and irrelevant.  Defendant also contends that the ALJ's decision is supported by substantial evidence in the record.  On February 6, 2006, Plaintiff filed a memorandum in opposition to Defendant's Motion to Strike.  (Doc. No. 20).

This Order analyzes Plaintiff's Objection to the Magistrate Judge's Report and Recommendation and Defendant's Motion to Strike.

## Standard of Review

Whenever a party files a timely and specific objection to a finding of fact by a Magistrate Judge, the District Court has an obligation to conduct a *de novo* review of the record with respect to that factual issue.  *Loconte v. Dugger*, 847 F.2d 745, 750 (11th Cir. 1988).  As the use of the term *de novo* implies, the District Court's consideration of the factual issue must be independent and based on the record before the Court.  *LoConte*, 847 F.2d at 750.

## Analysis

Plaintiff raises three arguments in her Memorandum in Support of her Petition for Judicial Review which she renewed in her Objection to the Magistrate Judge's Report and Recommendation. First, she claims that the ALJ applied the incorrect legal standard and made findings unsupported by record evidence.  Second, Plaintiff contends that the ALJ did not articulate adequate reasons for discrediting her testimony regarding pain and other symptoms.  Finally, Plaintiff argues that the ALJ's use of medical-vocational rules to find that she was not disabled involved the application of the

incorrect legal standard.  The Court will address each of these arguments in turn.

### 1. Plaintiff's Argument that the ALJ Applied the Incorrect Legal Standard

Plaintiff's first argument is that the ALJ applied the incorrect legal standard by failing to weigh all the evidence regarding her headaches, by failing to clearly explain the weight accorded to each item of evidence on the issue of how Plaintiff's headaches affected her ability to perform substantial gainful activity, and by failing to determine that Plaintiff's headaches limited her ability to perform the full range of sedentary work for any 12 month period prior to August 26, 2003.

The assessment of residual functional capacity is based on an analysis of all the relevant evidence of a claimant's ability to work despite the impairments.  20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The focus of the inquiry is on the doctor's evaluation of the claimant's condition and the medical consequences of the condition.  *Lewis*, 125 F.3d at 1440. The opinion, diagnosis, and medical evidence of a treating physician should be accorded substantial weight unless there is good cause to do otherwise.  *See id*; *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. §§ 404.1527(d), 416.927(d).

The record reflects that Plaintiff's condition improved significantly after Dr. Creamer prescribed MS IR 10 mg, #60 for neck and headache pain.  (R. 270).  At her next visit, Plaintiff reported feeling much better and was able to discontinue taking Excedrin and aspirin altogether.  (R. 269).  While Plaintiff cites Dr. Kane's opinion that her headaches caused problems with her ability to maintain consistent employment in support of her argument that the ALJ applied the incorrect legal standard, Dr. Kane qualified this opinion by placing his opinion about Plaintiff's headache problems in parentheses in the middle of a paragraph addressing Plaintiff's mental health for which he was Plaintiff's treating psychiatrist.  (R. 235).  Because the headaches were treated by Plaintiff's

-5-

neurologist and medical doctors, it was not inappropriate for the AJL to give Dr. Kane's opinion less

deference on the issue of how Plaintiff's headaches affected her ability to work than the testimony of

other physicians who provided medical care for the treatment of her headaches.  The ALJ examined

Dr. Kane's notes which explained that Plaintiff had "no real panic attacks–just anticipatory and

situational" and that Plaintiff had no real problems with sustained concentration, understanding,

memory, or persistence.  (R. 26, 233, 235).

There is additional evidence which leads the Court to conclude that the ALJ applied the correct

legal standard and relied on the evidence in making his determination that Plaintiff was not disabled.

Plaintiff's treatment records from Dr. Honeycutt demonstrate lengthy periods between sporadic visits

when she did not seek treatment for headaches: seven months (January to August 2000); six months

(September 2000 to February 2001); eight more months (to October 2001); three months (to January

2002); and four months (May 1, 2002). (R. 175-89).

As of January 21, 2002, Dr. Honeycutt believed Plaintiff's headaches to be resolving after

trying different medications: "She is currently taking Axert...and she reports that this regimen

successfully aborts her migraine headaches throughout the day.  She awakens every morning with a

migraine, however, raising the concern of rebound headaches...I pointed out, however, that the Axert

could be producing headache syndrome since she is taking it daily." (R.178).  On May 1, 2002,

Plaintiff reported that her headaches had resolved for a month after her medication was increased and

that with a change in her other medications, her daily headaches were redeveloping but were much less

severe as "tension-type" headaches.  (R. 175, 180).  Plaintiff visited several other doctors during this

time period but did not complain about her headaches or described them as mild.  (*See, e.g.* R. 203,

November 27, 2000; R. 202, January 23, 2001, R. 201, March 27, 2001; R. 199, October 9, 2001).

In August 2002, Dr. Creamer's medical notes indicated that Plaintiff reported "significant reduction of headache pain with less medication and also improved functional mobility with recent reduction of headache pain." (R. 218). On September 6, 2002, Plaintiff reported to Dr. Creamer a "significant reduction of headache pain. With a reduction of medication, she reports that her pain initially when seeing me was 10 out of 10 and is now reduced to a 3 or 4 out of 10 with a marked improvement in functional mobility and activity level." (R. 216). On April 3, 2003, Dr. Creamer first prescribed morphine for the treatment of Plaintiff's headaches. (R. 270). At Plaintiff's next appointment, she reported "feeling much better on the current regimen" without any complaints of drowsiness or sleepiness. (R. 269). Furthermore, Plaintiff stated that she was able to discontinue aspirin and Excedrin altogether since the start of the morphine. (*Id.*)

The Court has reviewed the record and determinations of the ALJ *de novo* and finds the determinations to be well-supported. Because the record reflects that the ALJ applied the correct legal standard and made findings supported by record evidence, the Court finds that Plaintiff's argument that the ALJ applied the incorrect legal standard is without merit.

### 2. Plaintiff's Argument that the ALJ did not Articulate Adequate Reasons for Discrediting her Testimony Regarding Pain and Other Symptoms

Plaintiff contends that the ALJ erred in evaluating her pain which is based on disc problems documented by medical evidence. Plaintiff claims that participation in everyday activities of short duration does not disqualify her from a finding of disability. The issue, Plaintiff argues, is whether she can perform substantial, gainful activity on a regular and continuing basis which means eight hours per day, five days per week. Plaintiff cites her 2003 MRI which showed a central disc protrusion at C4-5 with mild bulges at C4-5 and C6-7. (R. 267). Plaintiff also highlights evidence of her chronic neck, shoulder, and right arm pain on August 7, 2002. (R. 225).

If an ALJ decides not to credit a claimaint's testimony about pain, the ALJ must articulate

specific and adequate reasons for doing so, or the record must be obvious as to a credibility finding.

*Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991).  A reviewing court

will not disturb a clearly articulated credibility finding with substantial supporting evidence in the

record.  *See, e.g., Foote v. Chater*, 67 F.3d at 1553, 1561-62 (11th Cir. 1995).

In the instant case, the record reflects that the ALJ offered specific reasons for discrediting

Plaintiff's complaints.  (R.25-26).  The ALJ noted inconsistencies between Plaintiff's reports and the

examination findings in addition to inconsistencies between her statements and her activities of daily

living which are permissible factors for the ALJ to consider.[1]  20 C.F.R. §§ 404.1529, 416.929.  Even

more importantly, the ALJ's reasons were supported by substantial evidence.  For example, the ALJ

noted Dr. Kane's February 12, 2001 notes indicating that Plaintiff applied for disability "just to see

---

[1] The ALJ explained:
Considering the claimant's statement of record in connection with the medical evidence,
the undersigned finds that her statements are not fully credibly and not persuasive of an
inability to perform work-related activities.  She alleges depression, anxiety and
headaches and she testified that she experiences fear of people and does not like malls or
groups, has crying spells, does very little in terms of daily activities and stays indoor
[sic].  However, in a statement of record she indicated that she prepares simple meals,
can perform quick errands when needed, does most of her shopping, and performs light
cleaning and laundry.  She occasionally goes out with friends and relatives and gets along
with friends and family, people in authority and the public.  (Exhibit 2E).  On February
12, 2001, Dr. Kane indicated that the claimant "filed for disability just to see how it
works" (Exhibit 11F/6).  Her depression and anxiety are related to situational issues in
her life, i.e., the death of her father, breaking up with her boyfriend, and relationship with
family.  She was able to go on vacation to South Florida from August 11 to 18, 2000
(Exhibit 11F/20).  The medication effectively controls her headache and neck pain and
she has been able to sleep better.
(R. 25-26).

how it worked." (R. 25, 242).[2]  Because the ALJ's determination that Plaintiff's statements regarding her pain were not credible or supported by the record while the ALJ's findings were based on substantial evidence, the Court finds that Plaintiff's argument that the ALJ failed to articulate adequate reasons for discrediting her pain is without merit.

### 3. Plaintiff's Argument that the ALJ's Use of the Medical-Vocational Rules to find that She was not Disabled Involves the Application of an Incorrect Legal Standard

Because Plaintiff claims that she suffered from degenerative disc disease and headaches, she argues that she had non-exertional limitations which ultimately preclude the application of the grids. Plaintiff contends that these limitations compromise her ability to perform a full range of light work.

The ALJ has the obligation to develop a full and fair record regarding the vocational opportunities available to a claimant. *Foote*, 67 F.3d at 1558 (internal citations omitted).  The ALJ may meet this burden by exclusively relying on the grids. *Id.*  However, "'exclusive reliance on the grids is not appropriate either when the claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.'" *Id.* (internal citations omitted).  On the other hand, exclusive reliance on the grids is permissible in cases involving only exertional impairments which are impairments that place limits on an individual's ability to meet job strength requirements. *Id.* at 1559.

In the instant case, the ALJ found that Plaintiff has the exertional capacity to perform a wide range of light work although Plaintiff has postural limitations including limits on her ability to balance,

---

[2] In addition, the Magistrate Judge cited Plaintiff's notes that she "may need to return to work to eat" but that she would "limit gross monthly earnings to no more than $740," presumably so that she continue to qualify for disability. (Doc. No. 17, p. 17) (citing R. 55, April 18, 2001).  The Magistrate Judge also cited Dr. Clark's evaluation of Plaintiff for episodic vertigo. (Doc. No. 17, p. 17).  Dr. Clark wrote on three occasions that Plaintiff's alleged symptoms were suspicious and inconsistent with clinical findings.  (R. 107-08, 110-11).

stoop, kneel, crouch, crawl and limitations on social functioning, concentration, and persistence and pace.  (R. 27, 28).

   While Plaintiff has some limitations, the ALJ made a well-supported finding that the limitations are not significant enough to prevent a wide range of gainful employment at the designated level.  *See Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).  The ALJ found that Plaintiff has the residual functional capacity for light work because she could lift and carry twenty pounds occasionally and ten pounds frequently and that she could sit, stand, and walk for up to six hours in an eight hour day.[3]  (R. 28).

   The Social Security Regulations examine the impact of postural limitations on the ability to perform certain types of work.  (*See* Doc. No. 14-3, filed on April 28, 2005).  The Regulations explain that to perform all the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally.  (*Id.* at 3).  Very few jobs in the national economy would require a person to ascend or descend ladders and scaffolding.  (*Id.* at 2).  The Regulations further explain that some limitations in climbing, balancing, crawling, stooping, kneeling, or crouching would not impair a person from sedentary and light occupations.  (Doc. No. 14-4, p. 7).

   In the instant case, the ALJ appropriately analyzed and considered Plaintiff's postural limitations for climbing, stooping, kneeling, crouching, and crawling under the Social Security Regulations and found that Plaintiff had a residual functional capacity for light work.  Because a *de*

_____

   [3] 20 C.F.R. § 404.1567(b) defines light work:
   Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

-10-

*novo* review of the record demonstrates that Plaintiff could perform a wide range of limited types of work at the light level, the Court finds that Plaintiff's argument that the ALJ improperly relied on the grids is without merit.

### 4. Plaintiff's Objection that the Magistrate Judge Performed the Job of the ALJ and that the ALJ failed to evaluate all the evidence.

In her objection, Plaintiff contends that the Magistrate Judge "does the job that should be done by the" ALJ. (Doc. No. 18, p. 1). Plaintiff admits that the Magistrate Judge's Report and Recommendation does a detailed job of clearly explaining the weight that could have been given to various items of evidence. (*Id.*) However, Plaintiff argues that the ALJ failed to consider all the evidence and failed to make clear to this Court the weight that should be accorded to each item of evidence.

While Plaintiff takes issue with what she contends are ambiguous statements by the ALJ, the record reflects that the ALJ examined the evidence in making his determinations regarding Plaintiff's condition. In analyzing Plaintiff's claim, the ALJ considered Plaintiff's testimony and the medical records of William David Honeycutt, M.D., a neurologist, Michael Collins, M.D., Ahmed Masood, M.D., Donald Collins, M.D., Michael Creamer, D.O., Nancy S. Hinkeldey, Ph.D., a psychologist, and Martin S. Kane, M.D., a psychiatrist. The ALJ found inconsistencies between Plaintiff's testimony and the medical records of her treating physicians and also chose to discredit the statements of certain physicians if they had not done an in depth analysis of Plaintiff's condition. (*See* R. 25, 26, 27). For example, the ALJ explained that he discredited Dr. Hinkeldey's statements about Plaintiff's psychological state because she did not perform any special testing and only examined Plaintiff once. (R. 26). Rather, the ALJ chose to credit Dr. Kane's records on Plaintiff's psychological state because he had been treating Plaintiff for twelve years and saw her every month and a half. (*Id.*) The ALJ also

chose not to find credible the opinions of the State Agency medical consultants because they were not supported by the entire record.  (*Id.*)

Plaintiff's argument that the ALJ failed to weigh the evidence appears to be simply a reflection of the discontent that Plaintiff feels as a result of the decision reached by the ALJ.  The fact that the ALJ reached a decision contrary to Plaintiff's position does not mean that the ALJ ignored the evidence.  Rather, in the instant case, the ALJ's decision simply reflects a well-reasoned analysis based on the record, and not, as Plaintiff argues, an attempt by the ALJ to assemble series of unsupported assertions.

Because the ALJ's decision reflects that he specifically weighed each item of evidence and explained how he reached his decision, the Court finds that Plaintiff's objection that the ALJ failed to examine and weigh the evidence is without merit.  *See, e.g., Coward v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision.").  The Court also finds that the Magistrate Judge has not committed any error in the Report and Recommendation issued after reviewing the record and the ALJ's decision.

### Conclusion

Based on the foregoing, the Court rules as follows:

1.	The Report and Recommendation of the United States Magistrate Judge is **AFFIRMED** and **ADOPTED**.  (Doc. No. 17).

2.	Plaintiff's Objection to the Report and Recommendation is **OVERRULED**.  (Doc. No. 18).

3.	Defendant's Opposed Motion to Strike Portions of Plaintiff's Objections to Magistrate

Judge's Report and Recommendation is **DENIED** as moot.  (Doc. No. 19).


**DONE** and **ORDERED** in Chambers in Orlando, Florida on February __9,____ 2006.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record